Hall, Judge.
It is expressed in the agreement between Judith Pasteur and Abner Neale, amongst other things, that said Jones and Neale " shall put and leave, at the expiration of the term, the buildings upon the land.” In the lease from Judith Pasteur to Jones and Neale, there is a covenant on the part of the lessees, “ that they, their heirs, executors, administrators and assigns, will leave all houses, &c. that are now on the said lot, &c. or that they or any of them may erect hereafter on the same, in good tenantable order and repair." The lessees accepted of the lease, and enjoyed the premises under it. I am of opinion that the lessees are liable under that covenant, and that the rule of law is well established, that where a lessee covenants to repair the buildings, and so leave them, binds him, and makes him liable in case they are burnt down by fire, &c. 2 Com. Rep. 627. 1 Term 310, 710—and that in the present case the complainant is entitled to the sum of £. 400, the value of the houses, with interest thereon, from the expiration of the lease till paid.
*198 Johnston, Judge.
The question in this case is, whether the lessees are bound to perform their covenant, namely, to leave all such buildings on the lot as they should erect on it during the term, in, good repair at the expiration of the term; and whether they may be discharged from this covenant by an inevitable accident, inter-vening before the expiration of the lease, which wholly destroyed the buildings. It is a doctrine laid down in all the books on this subject, that all persons are bound to perform their covenants voluntary entered into, under all circumstances. The distinction appears to be, that where a duty is imposed by implication of law, the non-performance is excused by inevitable accident—if by a voluntary and express covenant for a valuable consideration, it is otherwise; because if it was intended that the lessees should avail themselves of such excuse, it would have been excepted in the contract, as is usual—Com. 627. Dyer 332, Alleyne 26. 1 Fonblanque, cases referred to in notes 361 to 366.
This is the general doctrine—but this is a much stronger case than any stated in any of the books: for here the houses erected on the ground previous to fixing the time for which the lease should continue, were valued at £.400; and it was at the same time considered that the use of the ground for seven years was equivalent to their value. The lessees have had the use of the land for seven years ; it is therefore in my judgment equitable that they should fulfil their part of the contract, either by leaving the buildings which had been erected in repair at the end of the term, or paying the plaintiff so much as will enable him to erect similar buildings.
*199 With respect to the question against whom shall the plaintiff have redress—whether against the lessee or assignee? I am of opinion that the lessor has his remedy against the lessees in the first instance, as the assignment was not made with his consent or approbation; but is not precluded from proceeding against the assignee at his election.
Taylor, Judge.—
The spirit of this contract was, that the lessor, at the end of the term, should have the lot restored, improved in its value by the amount of the buildings which Jones and Neale should erect. These were to be such as suited the convenience of the company, and were to be kept in repair, and left on the lot. The consideration of the actual expence in building, and the possible increase of expence in separation, and leaving the buildings on the lot, was the privilege of enjoying the lot for seven years: in other words, an agreement, on the part of the lessor, that for the time mentioned she would forego, and that Jones and Neale might enjoy all the benefit of the possession. This mode of compensation was fixed on by the parties in lieu of annual rent ; but the premises being destroyed by fire, before the end of the term, the defendant on that ground claims an exemption from the performance of the covenant; not because the terms of agreement are not sufficiently extensive, taking them in their common signification, but because it was not contemplated by either of the parties, that the lessee should rebuild after a destruction by fire. Were the question to be decided at law, a series of concurrent authorities, ancient and modern, would not permit us to doubt what the true rule was. Clearly *200 the tenant is bound to pay the rent, notwithstanding the destruction of the premises, in respect of which the rent, is reserved. Indeed the covenant to pay rent and to repair stands upon the same footing in that respect; and in both, the liability of the tenant flows from the general rule which has been stated.
No case has been produced, wherein equity has relieved further than to discharge the party from the penalty, which is a thing of course; and this does not appear to me to be such a case as would warrant the court to make a precedent. I am therefore of opinion that a decree should be made against the defendants for the principal sum, with interest, to be computed from the expiration of the lease.
Macay, Judge.—
The lease and covenants were executed on the 1st October, 1785—Jones and Neale continued in possession of the premises until the 30th April, 1787, when Jones assigns his interest to Neale for the consideration of £.300, on the 9th August, 1787. Neale assigns the remainder of the term to Richard Ellis for the consideration of £ .400. Richard Ellis and his tenants occupied the premises until the 28th Sept. 1791, when the buildings on the premises were consumed by fire. The buildings on the first of October, 1785, were of the value of £.400.— Jones and Neale agreed and covenanted that those buildings should be left on the land at the expiration of the term, which would end on the first of October, 1792. Jones and Neale, by themselves and their assigns, had possession of the premises near six years, and on the 9th August, 1787, had between them received £.700; and n *201 ow they say they ought not to rebuild the houses, because they were consumed by fire before the expiration of the term. Where the law creates a duty or charge, and the party is disabled to perform it without any default in him, and has no remedy over, there the law will excuse him; but where the party, by his own contract, creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by inevitable necessity; because he might have provided against it by his own contract. Therefore if the lessee covenants to repair a house, and it be burnt down by lightning, yet he ought to repair it—Alleyne 27—He must rebuild it—Com. Rep. 632. 2 Durn. & East 650.—The leaving the houses on the premises in good tenantable order and repair at the end of the term, was all the rent the plaintiff was to have for his term; and therefore Jones and Neale, by their covenant, have bound themselves to leave the houses on the premises in such order and repair at the end of the term, under the penalty of double their value. As the lessee has the advantage of casual profits, so he must run the risk of casual losses, and not lay all the burthen on the lessors. The houses having been built as a consideration for the term, and burnt down before the expiration of the term, and not rebuilt before the expiration thereof, the plaintiff receives nothing. The case cited from 1 Dall. 2—10, for defendants, cannot bear upon this case. There it was the opinion of the court that the rent must be paid, because of the express covenant to pay it; and that the whole burthen should not fall on the lessors. The other case from Amb. 619, is where accidents by fire were expressly excepted in the covenants.
*202 Let judgment be rendered for the plaintiff against the defendants for £. 400, with interest from the 2d Oct. 1792, until paid.